

**David E. Gottlieb**
dgottlieb@wigdorlaw.com

February 26, 2024

**VIA ECF**

The Honorable Michael J. Roemer
United States District Court
Western District of New York
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

      Re:    Grand'Maison v. Roswell Park Comprehensive Cancer Center, et al.;
                No. 23 Civ. 00099 (JLS) (MJR)

Dear Judge Roemer:

We represent Plaintiff Dr. Anne Grand'Maison and write pursuant to the Court's Amended Case Management Order to request a conference regarding the following discovery disputes.  Dkt. No. 42.[1]  Plaintiff respectfully requests a conference to address these matters and/or leave to file a formal motion.

**I.**      **FACTS AND PROCEDURAL HISTORY**

      **A.**      **Brief Summary of Relevant Facts**

Plaintiff is sarcoma oncologist who was hired by Roswell Park Comprehensive Cancer Center ("Roswell") on November 1, 2016.  During her employment, Dr. Grand'Maison raised concerns about the treatment practices and sexist behavior of Dr. Carl Morrison.

As detailed in the Complaint, Dr. Morrison regularly engaged in substandard and unsafe medical practices that put patients in grave danger.  As just one example, Dr. Morrison often refused permission to seek out second opinions in difficult cases when recommended by Dr. Grand'Maison, even though she was often proved to be correct.  Morrison's out-of-date cancer treatment methods and his refusal to seek out second opinions put patient health at risk and resulted in multiple misdiagnoses.  Dr. Morrison also demeaned, belittled and intimidated Dr. Grand'Maison in Tumor Board meetings, while he never treated male doctors with this level of

---

[1]      For brevity, Plaintiff has not attached a copy of her lengthy document requests herein, but they would of course be attached to any formal motion.


derision.  Dr. Grand' Maison suffered other workplace challenges while employed at Roswell, such as a chronic lack of clinical support.

On January 3, 2022, Dr. Grand'Maison erroneously informed Roswell *via* email that she would be moving back to Canada with her husband on May 1, 2022.  Roswell confirmed with Dr. Grand'Maison's husband that very day that they had no plans to move, and she never received a response to her email.  In the months that followed, Dr. Morrison persisted in berating Plaintiff in Tumor Board Meetings and continued to make decisions that negatively impacted the health of his patients.  On March 7, 2022, Dr. Grand'Maison met with Dr. Renier Brentjens regarding her concerns about Dr. Morrison and Roswell's continuing practice of placing patients at risk.  On March 9, 2022, Dr. Brentjens informed Dr. Grand'Maison that Dr. Morrison and Dr. John Kane III would no longer work with her in a mentorship meeting.  On March 15, 2022, Dr. Grand'Maison offered to send Dr. Brentjens extensive documentation of Dr. Morrison's misdiagnoses and other treatment failures.  On March 16, 2022, Plaintiff received an email informing her that her "resignation" had been "accepted" and her employment at Roswell would terminate in May 2022.

Dr. Grand'Maison attempted to explain that she never resigned or intended to resign and asked for the resignation to be rescinded.  Even if Roswell did somehow believe Dr. Grand'Maison intended to resign, there was no good reason why that resignation could not be rescinded, but Roswell refused.  Clearly Roswell was simply looking for a way to get rid of Dr. Grand'Maison who was viewed as a problematic employee for having blown the whistle on one of Roswell's prized senior doctors.  Dr. Grand'Maison's case does not stand alone, as there have been numerous cases filed against Roswell where others have asserted retaliation for asserting complaints about unsafe medical practices and discrimination.  Roswell has a record of retaliation against whistleblowers that is well reflected on the public docket.

    **B.**    **Procedural History**

On January 31, 2023, Dr. Grand'Maison filed her Complaint in this action.  On June 12, 2023, Plaintiff served initial discovery requests on Defendants.  Defendants responded on June 23, 2023.  On July 7, 2023, Plaintiff served her first deficiency letter.  At that time, Defendants had not produced a single document in response to Plaintiff's requests.  While Defendants later supplemented their responses, Plaintiff served a second deficiency letter on January 19, 2024.[2]  Plaintiff's second deficiency letter has gone unanswered.

---

[2]     As previously mentioned to the Court, fall/winter 2023 lead counsel for Plaintiff suffered from a medical condition that required surgery and recovery which has led to some delay in the discovery process.



## II.   SUMMARY OF THE DISPUTES

### A.   Defendants Have Not Produced a Privilege Log and Assert Inapplicable Privilege Objections

Defendants assert objections to numerous document requests on the basis of the attorney-client privilege, attorney-work product doctrine, and the privileges afforded by New York Public Health Law §§ 230, 2805-j, 2805-m, and New York Education Law § 6527.  Defendants have not produced a privilege log as required by the Federal Rules.  See Fed. R. Civ. P. 26(b)(5).  Additionally, the privileges established by New York State are "inapplicable" in an action "brought pursuant to both federal civil rights laws and state and city human rights laws." Morshed v. St. Barnabas Hosp., No. 16 Civ. 2862 (LGS), 2017 WL 543236, at *2 (S.D.N.Y. Feb. 10, 2017).  Defendants' privilege objections are therefore both inadequate and baseless.

### B.   Defendants Assert Baseless Privacy Objections and Have Not Confirmed Whether Responsive Documents Are Withheld on the Basis of Privacy

Defendants assert objections that certain discovery requests seek "confidential employee and personnel information."  The Parties have executed a privacy and confidentiality stipulation that addresses privacy and/or HIPPA concerns.  Plaintiff has twice requested that Defendants "confirm . . . that no responsive documents and/or identities have been withheld on the basis of 'privacy' and if documents and/or information remains withheld that it will be appropriately logged."  No such representation or log has been produced and Defendants have not confirmed that any responsive documents are being withheld on the basis of this objection as required by the Federal Rules.  See Fed. R. Civ. P. 34(b)(2)(c).

### C.   Identification of Withheld Documents

Plaintiff has propounded a large number of document requests as to which Defendants have stated that they have produced some limited set of documents but have failed to indicate what responsive documents, if any, are being withheld as required by the Federal Rules.  See Fed. R. Civ. P. 34(b)(2)(c).

### D.   Policies Related to EEO, Patient Safety and Relevant Employment Practices

Plaintiff has requested that Defendants produce relevant EEO and patient safety policies and procedures.  Defendants have produced Roswell's EEO policies, Roswell's policy regarding rescinding resignations, and Roswell's "Patients' Bill of Rights."  But Defendants have not indicated whether there are any additional documents regarding antidiscrimination, employee or physician discipline, compensation, staffing, resignations, evaluating the performance of physicians, processing physician resignations, considering requests to rescind physician resignations, investigating and responding to patient complaints, investigating and responding to employee complaints, or patient care policies, protocols and procedures.  Whether Roswell


abided by its own policies in disciplining Dr. Grand'Maison, handling complaints made by Dr. Grand'Maison and others about patient safety and treatment and accepting Dr. Grand'Maison resignation, for instance, are relevant and central to Plaintiff's claims.

### E. Documents Related to Plaintiff's Employment

Plaintiff has requested that Defendants produce all documents related to the terms and conditions of Plaintiff's employment, Plaintiff's job description, and all documents related to Plaintiff's compensation. Defendants have agreed to produce Plaintiff's personnel file but have not indicated whether Plaintiff's personnel file contains all relevant documents. As Defendants have made representations about Plaintiff's behavior and competence as a physician and an employee, both in refusing to accept her resignation and in their Answer to Plaintiff's Complaint, information about Plaintiff's employment is relevant. Plaintiff is entitled to the production of such additional documents as may exist.

### F. Personnel Files of Individual Defendants

Plaintiff has requested that Defendants produce a variety of documents related to the employment, performance and discipline of the individual Defendants. Defendants offered blanket objections. Dr. Grand'Maison proposed narrowing her requests to the production of all documents related to or regarding the personnel files and evaluations of named Defendants but never received a response from Defendants. These documents are routinely discoverable in employment litigation. See, e.g. Barella v. Village of Freeport, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) (personnel files relevant and discoverable in Title VII case); Ladson v. Ulltra E. Parking Corp., 164 F.R.D. 376, 378 (S.D.N.Y. 1996) (same).

### G. Performance and Disciplinary Documents of Other Medical Professionals in Plaintiff's Departments

Plaintiff has requested the production of all documents related to performance evaluations of, and disciplinary warnings and disciplinary actions taken against, physicians and Advance Practice Providers, as well as a number of documents related to employee behavior, employee coaching, and patient complaints and patient safety issues. Defendants offered blanket objections. Plaintiff has limited her requests to the Sarcoma/Melanoma service and the Lymphoma, Myeloma and Infectious Disease service in which she worked. These documents are relevant, as they relate directly to Defendants' alleged reasons for disciplining Plaintiff and ultimately ending her employment. Plaintiff is entitled to take discovery on whether others in her department engaged in similar supposed performance deficiencies and if and how they were disciplined, if at all. See Flanagan v. Travelers Ins. Co., 111 F.R.D. 42, 47 (W.D.N.Y. 1986) ("Comparative information is necessary to afford plaintiff a fair opportunity to develop her case and may be relevant to establish the pretextual nature of defendant's conduct.").


### H.    Documents Regarding Extensions of Probationary Period for Doctors

Plaintiff has requested documents regarding Roswell's extension of probationary periods for physicians other than Plaintiff and the establishment of Mentoring Committees for the same. Defendants offered blanket objections. In an effort to compromise on scope, Plaintiff inquired as to how many physicians had their probationary periods extended from January 1, 2016 to the present, and how many physicians had Mentoring Committees established during that same time period. Defendants never responded. These documents are relevant as Plaintiff's probationary period was extended and a Mentoring Committee was established for her, and Defendants apparently intend to use this as part of the basis for their defense. Defendants cannot put these actions at issue and then refuse to engage in discovery on these matters.

### I.    Documents Related to Employee Resignations at Roswell

Plaintiff requested that Defendants produce all documents related to physician resignations and requests by physicians to rescind resignations. Defendants offered blanket objections. As Defendants abruptly "accepted" Plaintiff's resignation after she filed a written complaint about Dr. Morrison, and then refused to rescind it claiming that they could not do so pursuant to Roswell policy and practice, information about other physicians who have resigned or rescinded their resignations is relevant. Clearly Roswell could have easily rescinded Dr. Grand'Maison's resignation but they chose not to do so. As such, Roswell's policies and practices regarding resignations and recissions are directly at issue in this litigation.

### J.    Documents Related to Structure of Roswell

Plaintiff has requested that Defendants produce documents related to the corporate structure of Roswell, the governance of Roswell, the relationship between Roswell and the State of New York, and Roswell's receipt of public funds from the state of New York or any municipal entity. Defendants have stated that they have produced "publicly-available documents." Plaintiff is entitled to the production of all relevant documents, whether or not they are publicly available. Roswell claims that Plaintiff is not entitled to punitive damages in this action because it is an "arm of the state" against which a Plaintiff is not entitled to punitive damages. If Defendants intend to assert this defense, Plaintiff is entitled to take discovery on these matters.

### K.    Documents Related to Other Complaints of Discrimination/Retaliation

Plaintiff has requested that Defendants to produce all documents related certain specific cases filed in federal court alleging similar forms of discrimination and retaliation against others, all other similar complaints regarding patient care or safety, gender discrimination, and retaliation. Defendants have stated that they have produced "publicly-available documents," and only documents regarding the six specific cases. Plaintiff is entitled to the production of all relevant documents hospital-wide as Plaintiff intends to present a case that Roswell has a *modus operandi*


to harass people and retaliate against them for raising discrimination and/or patient safety complaints. Moreover, Plaintiff has a more than sufficient factual basis to assert this theory of her case given the wealth of public allegations similar to Dr. Grand'Maison's. See e.g. Hollander v. Am. Cyanamid Co., 895 F.2d 80, 84-5 (2d Cir. 1990) ("It is well-settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported nondiscriminatory explanation."); Lieberman v. Gant, 630 F.2d 60, 68-69 (2d Cir. 1980) ("Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case); Sasikumar v. Brooklyn Hosp. Ctr., No. 09 Civ. 5632 (ENV) (RML), 2011 WL 1642585, at *3 (E.D.N.Y. May 2, 2011) ("Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case, and is therefore discoverable under Fed. R. Civ. P. 26(b)(1)."); Bolia v. Mercury Print Productions, Inc., No. 02 Civ. 6510T, 2004 WL 2526407, at *1 (W.D.N.Y. Oct. 28, 2004) (collecting cases).

### L.     Documents Related to Tumor Board Meetings

Plaintiff requested all documents related to the meetings of all Tumor Boards of which Plaintiff is a member. Defendants offered a blanket objection. All of Plaintiff's claims are directly related to these Tumor Board meetings and these documents are relevant.

### M.     Documents Related to Dr. Morrison's Substandard Care/Malpractice

Plaintiff has requested that Defendants produce documents related to second opinions, misdiagnoses, malpractice and internal review of the work by Dr. Morrison. Defendants objected on the basis of privilege without producing a privilege log. These documents are relevant as Plaintiff's whistleblowing was centered on Dr. Morrison's work and his misdiagnoses. Defendants are also not entitled to any privilege and privacy-related concerns can and are addressed by the HIPAA complaint protected order already in place.

### N.     Documents Related to Restrictions on Witness Communications

Plaintiff requested any document reflecting communication restrictions on any person identified in Defendants' Rule 26(a) disclosures, such as NDAs, confidentiality agreements and cooperation agreements. While Defendants stated that no such documents exist, Plaintiff is aware that responsive documents do exist. These documents are relevant because Plaintiff must know if communication restrictions have been imposed on individuals from whom Plaintiff may need to collect information or who may be called as witnesses.

*          *          *



Hon. Michael J. Roemer<br>
February 26, 2024<br>
Page 7

The above is a summary of the open discovery disputes and is not fully comprehensive or exhaustive, and all rights are reserved as to any eventual motion.  We thank Your Honor for the Court's time and consideration of this matter.

Respectfully submitted,

David E. Gottlieb

cc:  All Counsel of Record (*via* ECF)