**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

ANNE GRAND'MAISON, M.D.,                              :
                                                     :
                        Plaintiff,                   :    Civil Action No. 23 Civ. 00099
                                                     :    (JLS)(MJR)
            v.                                       :
                                                     :
ROSWELL PARK COMPREHENSIVE CANCER                    :
CENTER; CANDACE JOHNSON, Ph.D., in her               :
individual and professional capacities; RENIER       :
BRENTJENS, M.D., Ph.D., in his individual and        :
professional capacities; CARL MORRISON, M.D.,        :
DVM, in his individual and professional capacities;  :
JOHN KANE III, M.D., in his individual and           :
professional capacities; and ERROL DOUGLAS,          :
Ph.D., in his individual and professional capacities,:
                                                     :
                        Defendants.                  :

---------------------------------------------------------------- X

**PLAINTIFF ANNE GRAND'MAISON'S MEMORANDUM OF LAW IN SUPPORT OF**
<u>**HER MOTION FOR SUMMARY JUDGMENT**</u>

**WIGDOR LLP**

David E. Gottlieb
William Baker

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dgottlieb@wigdorlaw.com
wbaker@wigdorlaw.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ..................................................................................................1

LEGAL STANDARD...........................................................................................................7

ARGUMENT.........................................................................................................................7

I.        Punitive Damages are Expressly Available Under NYLL §§ 740 and 741........................8

II.       Roswell is Not Immune to Punitive Damages Claims Under Other Statutes .....................9

          A.        Applicable Standard..............................................................................................9

          B.        Factor 1: Roswell's Likeness to the State in the Degree to Which it Dominates
                    its Service Area ...................................................................................................11

          C.        Factor 2: Whether, with Respect to its Powers, Functions, and Obligations,
                    Roswell is Similar to its Counterparts in the Private or Not-For-Profit Sector .....12

          D.        Factor 3: The Aims and Goals of the Corporation Statute....................................14

          E.        Factor 4: The Extent of Public Funding Received by Roswell.............................16

CONCLUSION....................................................................................................................17

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) ................................................................................................... 7, 12, 17

Balko v. Ukrainian Nat. Fed. Credit Union,
   No. 13 Civ. 1333 (LAK) (AJP), 2014 WL 1377580 (S.D.N.Y. Mar. 28, 2014)......................... 9

Beckett v. Atlas Air, Inc.,
   968 F. Supp. 814 (E.D.N.Y. 1997)........................................................................................ 9

BMW of North America, Inc. v. Gore,
   517 U.S. 559 (1996) ........................................................................................................... 15

Chen-Oster v. Goldman, Sachs & Co.,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020)................................................................................... 15

City of Newport v. Fact Concerts, Inc.,
   453 U.S. 247 (1981) ...................................................................................................... 11, 17

Clark-Fitzpatrick, Inc. v. Long Island R. Co.,
   516 N.E.2d 190 (N.Y. 1987) ........................................................................................ passim

Dormitory Auth. of State of N. Y. v. Span Elec. Corp.,
   218 N.E.2d 693 (N.Y. 1966) ............................................................................................... 13

Franklin v. Gwinnett County Public Schools,
   503 U.S. 60 (1992) ............................................................................................................... 9

Gilead Community Services, Inc. v. Town of Cromwell,
   112 F.4th 93 (2d Cir. 2024).............................................................................................. 7, 8

H & R Industries, Inc. v. Kirshner,
   899 F. Supp. 995 (E.D.N.Y. 1995)........................................................................................ 7

Holtz v. Town of Arcadia,
   No. 22 Civ. 06449 (EAW), 2025 WL 606544 (W.D.N.Y. Feb. 24, 2025) ............................... 7

In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,
   89 N.E.3d 1227 (N.Y. 2017) ............................................................................................ 9, 14

In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,
   846 F.3d 58 (2d Cir. 2017) .......................................................................................... 10

John Grace & Co., Inc. v. State Univ. Construction Fund,
   375 N.E.2d 377 (N.Y. 1978) ............................................................................... 9, 10, 11

Jordan v. City of New York,
   No. 23 Civ. 4962, 2024 WL 4872186 (S.D.N.Y. Nov. 22, 2024) ............................................ 8

Leon v. Murphy,
   988 F.2d 303 (2d Cir. 1993) .......................................................................................... 14

Massiah v. MetroPlus Health Plan, Inc.,
   856 F. Supp. 2d 494 (E.D.N.Y. 2012).............................................................................. passim

Oldroyd v. Elmira Sav. Bank, F.S.B.,
   956 F. Supp. 393 (W.D.N.Y. 1997) ................................................................................. 15

Robinson v. Concentra Health Servs., Inc.,
   781 F.3d 42 (2d Cir. 2015).............................................................................................. 7

Scottsdale Ins. Co. v. McGrath,
   549 F. Supp. 3d 334 (S.D.N.Y. 2021).............................................................................. 7

State Farm Mut. Auto. Ins. Co. v. Campbell,
   538 U.S. 408 (2003) ...................................................................................................... 15

Zhou v. Roswell Park Cancer Inst. Corp.,
   No. 19 Civ. 1200 (LJV) (MWP), 2021 WL 4272286 (W.D.N.Y. Sept. 21, 2021) ....... 11, 16, 17

**Statutes**

N.Y. Const. art. X, § 5 ....................................................................................................... 2, 9
N.Y. Exec. L. § 297 .......................................................................................................... 9
N.Y. Pub. Auth. Law § 3550 *et seq.* ..................................................................................... passim
N.Y. Pub. Auth. Law § 3562 ............................................................................................. 5, 17
New York Labor Law § 215 .............................................................................................. 9
New York Labor Law § 740 .............................................................................................. 1, 8, 9
New York Labor Law § 741 .............................................................................................. 1, 8, 9
New York Not-for-Profit Corporation Law § 715 ................................................................... 9

Plaintiff Dr. Anne Grand'Maison ("Dr. Grand'Maison") respectfully moves this Court for an order granting summary judgment against Defendant Roswell Park Comprehensive Cancer Center's ("Roswell") as to its claimed defense of immunity from punitive damages. For the reasons set forth herein, Roswell is not immune from punitive damages as a matter of law.

## PRELIMINARY STATEMENT

Roswell has argued, including in its Answer as an Affirmative Defense, that it has immunity from punitive damages. Ex. 1 at p. 46.[1] The evidence revealed through discovery, together with the applicable law, has proven that position to be conclusively wrong for two reasons. First, two of Plaintiff's asserted causes of action explicitly provide for punitive damages as a remedy with no exceptions, as to municipalities or otherwise. See New York Labor Law ("NYLL") §§ 740(5)(g); 741(4). Roswell cannot, as a matter of law, assert immunity from punitive damages under those statutes. Second, to the extent Roswell claims immunity under other statutes on the basis that it is a "public benefit corporation," any such potential immunity requires a "particularized inquiry," and under scrutiny here, it is clear that Roswell is not the equivalent of a municipal agency for the purpose of a punitive damages analysis. See Clark-Fitzpatrick, Inc. v. Long Island R. Co., 516 N.E.2d 190, 192 (N.Y. 1987). As such, as a matter of law, Roswell is not immune from punitive damages in the matter at bar.

## STATEMENT OF FACTS

This is a whistleblower retaliation action in which Dr. Grand'Maison, a sarcoma oncologist, was fired within days of raising protected complaints about serious medical misconduct as to cancer patients, including misdiagnosis, mistreatment, misapplication of harmful chemotherapy, refusal to seek second opinions, and other issues related to egregiously

---

[1] All references to "Ex. __" are references to the exhibits contained in the Appendix to Local Rule 56 Statement of Material Facts, pursuant to Local Rule 56(a)(4).

1

substandard care.  See, e.g., Ex. 2, Dep. of Anne Grand'Maison at 101:1-14.  Roswell may claim

Dr. Grand'Maison "resigned," and that Roswell then refused to permit her to rescind her

resignation because it had already made a decision to terminate her; however,

Dr. Grand'Maison's supervisor testified that no such decision had ever been made before she

raised her protected complaints.[2]  Roswell has taken the position throughout this litigation that

even if it is liable, it is immune from punitive damages as a matter of law because it is a "public

benefit corporation."  See Ex. 1 at p. 46.

Roswell is correct that it is a "public benefit corporation" created pursuant to N.Y. Pub.

Auth. Law § 3550 et seq. (the "corporation act") and N.Y. Const. art. X, § 5.  See Ex. 4 (the

corporation act).  The hospital was formed in 1898, and was formally moved out of the

Department of Health and made a public benefit corporation in 1999.[3]  Ex. 5, Dep. of Candace

Johnson, Ph.D. ("CEO Johnson Dep.") at 38:5-7.  However, Roswell's own Chief Executive

Officer, Defendant Candace Johnson, Ph.D., ("CEO Johnson") disclaimed that the hospital

constitutes an "arm of the state" or "alter ego" of the state because it is a "public benefit

corporation."  She testified:

> Today, you see our balance sheet. We're very -- you know, we're
> less than 10 percent. We're like 6, 7 percent of our support comes
> from the state of New York. So *we are not an arm of the state* . . . .
> We're a knowledge for the citizens of the residents of New York
> State. But *we are not an arm of the state*.

Id. at 38:12-24 (emphasis added).

---

[2]    Dr. Renier Brentjens testified that there was no discussion about terminating Dr. Grand'Maison's employment prior to her making protected complaints, see, e.g., Ex. 3, Dep. of Renier Brentjens at 95:5-8, only to then reverse that testimony after a lunch break with counsel.

[3]    See https://www.roswellpark.org/about-us (last accessed 2/24/2026).

2

CEO Johnson's testimony simply confirmed the obvious.  Roswell, as a hospital, does not provide a service or function unique to state function or strictly within the purview of the government.  When asked, CEO Johnson acknowledged this as well:

> Mr. Gottlieb:  What is your understanding of the services that a government typically provides that Roswell handles?
>
> …
>
> CEO Johnson: I don't know.  I don't – we're not a government.

Id. at 36:23-37:8.  This testimony is consistent with the fact that there are approximately 158 open hospitals in New York State.[4]  There are six National Cancer Institute Designated Cancer Centers in New York State, and Roswell is the only public benefit corporation among them.[5]  In fact, one reason why the New York legislature made Roswell a public benefit corporation was the presence of multiple major competitors in the healthcare market in Western New York.  N.Y. Pub. Auth. Law § 3551(7) ("the penetration of managed care and the formation of at least three large health care delivery systems in Western New York pose new competitive challenges for Roswell Park Cancer Institute").

Roswell is not controlled by New York State in any meaningful manner; rather, it is governed by a board of directors that does not answer to anyone in state government.  CEO Johnson testified to this during her deposition.

> Mr. Gottlieb:  Who does the board of directors answer to?
>
> CEO Johnson: They don't really answer to anyone. The chairman of the board is appointed by the governor.  So you might say they have some -- I don't think that the governor has oversight over that. She really allows the board to be pretty autonomous.
>
> Q:       … Do you ever need to consult with the governor for approval on the manner in which you're operating and managing Roswell?

---

[4]    See https://www.health.ny.gov/regulations/hcra/provider/provhosp.htm (last accessed 2/17/2026).
[5]    See https://www.cancer.gov/research/infrastructure/cancer-centers/find (last accessed 2/17/2026).

A:      No. . . No.

Q:      Does anybody need to get the governor's approval or input on the way Roswell is managing itself?

…

A:      No.

Q:      Same question with respect to any other state officers or state law members?

…

A:      No.

Q:      Would you say that Roswell is controlled by the state of New York?

A:      No.

Id. at 41:18-42:24.  Instead, Roswell is essentially empowered to be self-sustaining and self-governing.  See N.Y. Pub. Auth. Law § 3554 (22) (setting forth that Roswell shall have the power "to do all things necessary, convenient or desirable, including ancillary and incidental activities, to carry out its purposes and for the exercise of the powers granted" to it as a public benefit corporation); see also id.

Furthermore, Roswell, not the state government, has the power to itself "deal in and with[] real or personal property."  N.Y. Pub. Auth. Law § 3554(3-4, 6-7).[6]  It can set its own rates and fees, borrow money, issue bonds, and lend and invest money.  N.Y. Pub. Auth. Law § 3554(10-14).  Additionally, Roswell may appoint its own officers, hire its own counsel, and

---

[6]      N.Y. Pub. Auth. Law § 3554(3-4, 6-7) (enabling Roswell to "purchase, receive, take by grant, gift, devise, bequest or otherwise, lease, or otherwise acquire, own, hold, improve, employ, use and otherwise deal in and with, real or personal property, or any interest therein, wherever situated," to "purchase, take, receive, subscribe for, or otherwise acquire, own, hold, vote, employ, sell, lend, lease, exchange, transfer, or otherwise dispose of, mortgage, pledge, use and otherwise deal in and with, bonds and other obligations, shares, or other securities or interests issued by others, whether engaged in similar or different business, governmental, or other activities," to "sell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage or pledge, or create a security interest in, all or any of its property or any interest therein, wherever situated, upon such terms and conditions and in such manner as the corporation shall determine," and to "make capital contributions to other not-for-profit corporations").

4

make its own governance and management rules.  N.Y. Pub. Auth. Law § 3554(15-17).[7]  As such, Roswell's Board has adapted a set of bylaws.  Ex. 6 at RP446.  That document establishes the positions of most officers of Roswell, sets their responsibilities, creates Board committees, sets a Board code of ethics, and specifies additional administrative and fiscal functions.  See generally id.

Financially, Roswell is independent from New York State.  In 2024, the state contributed just 8% of the hospital's budget.  CEO Johnson Dep. at 25:16-20, 38:13-22; see also Ex. 7, (Roswell's most recent publicly-available budget, for the year 2025, which indicates that the state's contributions to the hospital continue to shrink).  New York is not liable for payment of any Roswell bonds or notes or budget deficits.  N.Y. Pub. Auth. Law § 3562.  Roswell is also empowered to set its own rates and fees, borrow money, issue bonds, and lend and invest money, as noted above.  N.Y. Pub. Auth. Law § 3554(3-4, 6, 10-14).  It is empowered by statute "to do all things necessary, convenient or desirable, including ancillary and incidental activities, to carry out its purposes."  N.Y. Pub. Auth. Law § 3554(22).

Roswell is supported substantially by the Roswell Park Alliance Foundation (the "Alliance Foundation"), which is a private 501(c)(3) nonprofit organization.  See Ex. 8.  That organization raised approximately $29,500,000 for the Roswell in fiscal year 2024-25.  Id. at 34.  Dr. Johnson testified about Alliance Foundation's role in supporting Roswell as follows:

Mr. Gottlieb:  Does Roswell have an endowment of some sort?

---

[7]    N.Y. Pub. Auth. Law § 3554(15-17) (enabling Roswell to "appoint such officers, employees and agents as the corporation may require for the performance of its duties and . . . to fix and determine their qualifications, duties, and compensation," to "to  retain or employ counsel, auditors, and engineers . . . and, private consultants on a contract basis or otherwise for rendering professional,   management or technical services and advice," and to "make, adopt, amend, enforce and repeal rules for its governance and internal management and personnel practices").

CEO Johnson: We have a 501(c)(3) philanthropic arm to us, but that's not part of us. It's a separate entity that raises philanthropic dollars for us. That's not a part of this.

Q:   You say this philanthropic arm raises funding for Roswell; correct?

A.   Correct.

Q.   What's the name of that entity?

A.   The Alliance Foundation.

Q.   Does that Alliance Foundation raise funds for any other entities or it's strictly for Roswell?

A.   No. It's just for Roswell. . . It has an endowment. Very small endowment, but it has an endowment. . .

Q:   On an annual basis do you have any idea what that organization donates to Roswell?

. . .

A:   I believe they raise anywhere from 25 to $30 million a year. I'm not saying we get all of that. Some of that goes into endowment, but that's what they raise every year through a whole series of events and grateful patients, just like any other institution our size does.

Q:   They donate some portion of their fundraising annually to the hospital; correct?

A:   The whole premise of the Alliance Foundation is to raise money for research for Roswell Park. . . .

Q:   They're typically giving you tens of millions of dollars?

A:   Yes.

CEO Johnson Dep., 28:11-29:25.

Legislators made it clear that Roswell's status as a public benefit corporation should not interfere with the rights of its employees.  Roswell was given a separate existence from the state to empower it to hire, fire, and interact with employees as private actor would.  See N.Y. Pub. Auth. Law § 3554(15-17).  The section of the statute that describes legislative intent also

6

specifically states that it is meant to be "construed to ensure that the rights of employees are protected." N.Y. Pub. Auth. Law § 3551(9).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party has met its burden, the burden shifts, and the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015).

The issue of immunity from punitive damages is an appropriate inquiry for summary judgment. See, e.g., Holtz v. Town of Arcadia, No. 22 Civ. 06449 (EAW), 2025 WL 606544, at *10 (W.D.N.Y. Feb. 24, 2025) (determining the availability of punitive damages at the summary judgment stage); H & R Industries, Inc. v. Kirshner, 899 F. Supp. 995, 1012 (E.D.N.Y. 1995) (same); Scottsdale Ins. Co. v. McGrath, 549 F. Supp. 3d 334, 355 (S.D.N.Y. 2021) (same).

## ARGUMENT

Punitive damages may be awarded against Roswell for two distinct reasons: (1) even if Roswell were to constitute an arm of the state (it does not), under statutes expressly setting forth punitive damages as an available remedy, without any carveout as to municipalities, such damages are available under the law, Gilead Community Services, Inc. v. Town of Cromwell, 112 F.4th 93, 103 (2d Cir. 2024), and (2) Roswell, even though a public benefit corporation, is not an "arm[] or agenc[y] of the state for all purposes." Massiah v. MetroPlus Health Plan, Inc.,

7

856 F. Supp. 2d 494, 497 (E.D.N.Y. 2012).  Rather, as a hospital which operates almost entirely independently from the state and is nearly entirely self-funded, it is not the equivalent of a state agency or alter ego of the state.

**I.      Punitive Damages are Expressly Available Under NYLL §§ 740 and 741**

Where a statute provides for punitive damages and does not expressly exempt governmental entities, those entities are not immune from that category of damages as a matter of law.  Gilead Community Services, 112 F.4th at 103 (2d Cir. 2024) (holding that, where the text of a statute allowed for "actual and punitive damages" with no exceptions, that statute "necessarily subjects" a municipality "to those remedies").

Punitive damages are expressly available under NYLL §§ 740 and 741.  See NYLL §§ 740(5)(g) (providing, as a remedy for violation of the statute, for "the payment by the employer of punitive damages, if the violation was willful, malicious or wanton"), 741(4) (incorporating NYLL § 740's damages provision).  NYLL § 740 contains no limitations as to which entities may be considered a covered employer, defining the term as *any* "person, firm, partnership, institution, corporation, or association that employs one or more employees."  Id. NYLL § 741(b) explicitly covers "the state[] or any political subdivision of the state."

These statutes therefore have no exceptions for government entities, or include government entities, and they include both private and public employers within their ambit.  See Jordan v. City of New York, No. 23 Civ. 4962, 2024 WL 4872186, at *4 (S.D.N.Y. Nov. 22, 2024) (relying on Gilead, holding that because New York City Human Rights Law generally "applies to municipal defendants, and provides no textually specified exceptions," punitive damages are available even against municipalities under that statute).

For these reasons, as a matter of law, punitive damages are available against Roswell under NYLL §§ 740 and 741.

## II.    <u>Roswell is Not Immune to Punitive Damages Claims Under Other Statutes</u>

To the extent punitive damages are available under the remaining causes of action,[8] Roswell may argue that it is exempt for punitive damages because it constitutes the equivalent of a "municipality" or "governmental agency."[9]  Under the applicable standards, that is incorrect.

### A.    Applicable Standard

As a matter of law, "not all public benefit corporations . . . are to be regarded as arms or agencies of the state for all purposes."  <u>Massiah</u>, 856 F. Supp. 2d at 497.  Rather, the New York Court of Appeals has held that "a particularized inquiry is necessary to determine whether—for the specific purpose at issue—the public benefit corporation should be treated like the State."  <u>Clark-Fitzpatrick</u>, 516 N.E.2d at 192.

Such a "particularized inquiry" is specific to both the statutory scheme or common law rule at issue and the public benefit corporation being analyzed.  <u>In re World Trade Ctr. Lower Manhattan Disaster Site Litig.</u>, 89 N.E.3d 1227, 1235 (N.Y. 2017) (analyzing cases assessing whether public benefit corporations should be treated like the state and characterizing the inquiry

---

[8]    Punitive damages are either expressly or implicitly available under the other causes of action pursuant to N.Y. Exec. L. § 297(9), New York Not-for-Profit Corporation Law § 715-b, New York Labor Law § 215, and Buffalo Administrative Code § 154-11.  <u>See</u> <u>Franklin v. Gwinnett County Public Schools</u>, 503 U.S. 60, 66 (1992) ("we presume the availability of all remedies unless [the legislature] has expressly indicated otherwise"); <u>Beckett v. Atlas Air, Inc.</u>, 968 F. Supp. 814, 824 (E.D.N.Y. 1997) (collecting cases holding that punitive damages are available under various statutes prohibiting wrongful or retaliatory discharge); <u>Balko v. Ukrainian Nat. Fed. Credit Union</u>, No. 13 Civ. 1333 (LAK) (AJP), 2014 WL 1377580, at *26 (S.D.N.Y. Mar. 28, 2014), <u>report and recommendation adopted sub nom.</u> <u>Balko v. Ukrainian Natl. Fed. Credit Union</u>, No. 13 Civ. 1333 (LAK), 2014 WL 12543813 (S.D.N.Y. June 10, 2014) (collecting authorities supporting the proposition that punitive damages are generally available in actions sounding in tort in the employment context).

[9]    Roswell is a public benefit corporation.  <u>See</u> N.Y. Pub. Auth. Law § 3554.  Public benefit corporations are creations of the New York state legislature.  <u>See</u> N.Y. Const. art. X, § 5. Public benefit corporations have, for some purposes, been found to be akin to the state.  <u>See</u> <u>Clark-Fitzpatrick</u>, 516 N.E.2d 190.  However, "public benefit corporations . . . are not identical to the State or any of its agencies, but rather enjoy, for some purposes, an existence separate and apart from the State, its agencies and political subdivisions."  <u>John Grace & Co., Inc. v. State Univ. Construction Fund</u>, 375 N.E.2d 377, 378 (N.Y. 1978).

9

as one into whether a "common-law rule defining the State's rights or responsibilities vis-à-vis private parties [such as employees] could be extended to a public benefit corporation"); <u>see</u> <u>also</u> <u>In re World Trade Ctr. Lower Manhattan Disaster Site Litig.</u>, 846 F.3d 58, 60 (2d Cir. 2017) (certifying to the New York Court of Appeals a question regarding what considerations are relevant in the "particularized inquiry" discussed in <u>Clark-Fitzpatrick</u>).  Respectfully, therefore, the Court may not depend on previous determinations that other public benefit corporations are, or have been, held to be government entities, but must make a "particularized inquiry" into Roswell and the punitive damages issue in the case at bar.  <u>Clark-Fitzpatrick</u>, 516 N.E.2d at 192.

Neither the Second Circuit nor the New York Court of Appeals have set a definitive test, but several courts have addressed this issue and those courts have collectively provided an appropriate framework for such analysis.  Respectfully, <u>Massiah v. MetroPlus Health Plan, Inc.</u>, 856 F. Supp. 2d 494 (E.D.N.Y. 2012), together with <u>Clark-Fitzpatrick</u> and <u>John Grace & Co., Inc. v. State Univ. Construction Fund</u>, 375 N.E.2d 377, 378 (N.Y. 1978), offer a comprehensive formulation of factors for this analysis.[10]

Together, those courts consider:

(1)     "whether a public benefit corporation is akin to the state [in] the degree to which it dominates the service area in which it operates,"

(2)     "whether, with respect to [the powers, functions, and obligations of the corporation], the corporation is similar to its counterparts in the private or not-for-profit sector,"

---

[10]     <u>Massiah</u> analyzed the appropriateness of applying a NYLL provision exempting political subdivisions from certain wage requirements as to MetroPlus Health Plan, Inc., a subsidiary of the public benefit corporation New York City Health and Hospitals Corporation.  <u>See generally id.</u>  That court ultimately determined that MetroPlus Health Plan, Inc. was not a political subdivision for the purpose of that NYLL provision.  <u>Id.</u> at 500.

10

(3)     whether "the aims and goals of the particular New York statute in question"

support such determination, and

(4)     the extent of public funding received by the entity in question.

See Massiah, 856 F. Supp. 2d at 498-9; Clark-Fitzpatrick, 516 N.E.2d at 192-93; John Grace,

375 N.E.2d at 379; see also Zhou v. Roswell Park Cancer Inst. Corp., No. 19 Civ. 1200 (LJV)

(MWP), 2021 WL 4272286, at *5 (W.D.N.Y. Sept. 21, 2021) (noting that whether Roswell is

exempt from punitive damages requires assessment of "how an award of punitive damages

against Roswell Park would be paid and its impact on the public fisc").[11]

### B.     Factor 1: Roswell's Likeness to the State in the Degree to Which it Dominates its Service Area

Roswell does not "dominate[] the service area in which it operates."  Massiah, 856 F.

Supp. 2d at 498.  Rather, it is one of a number of major medical providers in Western New York,

such as Rochester Regional Health and Kaleida Health.  In fact, the legislature specifically made

Roswell a public benefit corporation because "at least three large health care delivery systems in

Western New York" posed "new competitive challenges," and as such "the needs of the residents

of the state of New York" were best served by providing the hospital with "legal, financial,

market and managerial flexibility."  N.Y. Pub. Auth. Law § 3551(7).

Furthermore, there are numerous healthcare providers statewide, the vast majority of

which are non-profit or for-profit organizations.  The New York State Department of Health lists

158 open hospitals in the state.[12]  The vast majority of these are not public benefit corporations.

There are also six National Cancer Institute Designated Cancer Centers in New York state, of

---

[11]     State financial support is particularly important in assessing whether punitive damages are appropriate because the principal concern in applying punitive damages against political subdivisions is that "innocent taxpayers would be unfairly punished."  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266 (1981).
[12]     See https://www.health.ny.gov/regulations/hcra/provider/provhosp.html (last accessed 2/17/2026).

which Roswell is the only public benefit corporation.[13]  Far from being the "sole provider" of its services, it is one of several similarly situated healthcare providers in the region, and one of over 150 healthcare providers statewide.  Massiah, 856 F. Supp. 2d at 498.

Clark-Fitzpatrick, Inc. v. Long Isl. R. Co., 70 N.Y.2d 382 (1981) is instructive by contrast.  In Clark-Fitzgerald, the New York Court of Appeals assessed whether the Long Island Railroad ("LIRR"), a public benefit corporation, could be liable for punitive damages in a commercial dispute.  The Court conducted an analysis as to whether LIRR—the sole commuter rail between New York City and Long Island—was an effective arm of the state and concluded that it was in large part because it conducts an "essential public function."  In contrast, numerous predominantly non-profit and private entities carry out healthcare and cancer care functions in the state.  These undisputed material facts show that Roswell does not dominate the service area in which it operates as a governmental entity does.  Anderson, 477 U.S. at 248.

### C.    Factor 2: Whether, with Respect to its Powers, Functions, and Obligations, Roswell is Similar to its Counterparts in the Private or Not-For-Profit Sector

Roswell is "is similar to its counterparts in the private or not-for-profit sector" in its powers, functions and obligations, and it does not act like a municipality or government agency in those respects.  Massiah, 856 F. Supp. 2d at 498.

As noted in § II.B, supra, there are numerous other private and not-for-profit players in the healthcare industry.  Like them, Roswell operates with effective autonomy from the state of New York.  It has the power to "deal in and with[] real or personal property."  N.Y. Pub. Auth. Law § 3554(3-4, 6).  It has the power to set its own rates and fees, borrow money, issue bonds, and lend and invest money.  N.Y. Pub. Auth. Law § 3554(10-14).  It may appoint its own officers, hire its own counsel, and make its own governance and management rules.  N.Y. Pub.

---

[13]    See https://www.cancer.gov/research/infrastructure/cancer-centers/find (last accessed 2/17/2026).

Auth. Law § 3554(15-17).  Essentially, Roswell is empowered to be self-sustaining and self-governing.  See N.Y. Pub. Auth. Law § 3554(22).  In sum, the hospital's corporation legislation allows it to "enjoy[] a separate existence [from the state], transact[] its own business, [and] hir[e] and compensate[e] its own personnel," clear indicia that it does not act as the state does.  Dormitory Auth. of State of N. Y. v. Span Elec. Corp., 218 N.E.2d 693, 695 (N.Y. 1966).

Additionally, Roswell receives donations through the Alliance Foundation "just like any other institution [of its] size does."  CEO Johnson Dep., 29:14-15.  Through that 501(c)(3), the hospital has another form of support that is outside of the state, but it also has the support of a fundraising arm like a private actor, and unlike a governmental one.  See generally Ex. 8 (showing that the Alliance Foundation is an independent charity that raises funds for Roswell).

Further, Roswell has independent control of its management and functions in a way that a state's political subdivisions do not.  As set forth above, Roswell has the ability to "execute its own contracts, leases, and other agreements" and "the substantial ability to hire and control its personnel."  Massiah, 856 F. Supp. 2d at 499.  While Roswell's board of directors is appointed by the governor and other state officials, those individuals are not under significant state control.  Rather, they "don't really answer to anyone."  CEO Johnson Dep., 41:21.  They are "autonomous" instead.  Id., 41:25.

Roswell's bylaws, which are passed and implemented by the board itself, confirm this autonomy, discussing almost no state intervention into the operations of the board.  Ex. 6. Rather, those bylaws establish the positions of most officers of Roswell, set their responsibilities, create board committees, craft a board code of ethics, and specify additional administrative and fiscal functions, all outside of the corporation act and without the approval or involvement of any state official.  See generally id.  In fact, CEO Johnson testified in her deposition that the

13

hospital's board does not consult the governor in its decision making nor does it require the governor's, or any other state officer's, approval to conduct its own management.  CEO Johnson Dep., 42:3-21.  Roswell is not "controlled by the state of New York."  Id., 42:22-24.  It is "not an arm of the state."  Id., 37:22-38:24.  It is "not a government."  Id. at 36:23-37:8.

Considering these admissions by Roswell's CEO, "no reasonable trier of fact could find" that Roswell resembles anything but a private actor, as opposed to a state actor, in its operations. Leon v. Murphy, 988 F.2d 303, 308 (2d Cir. 1993).

### D.    Factor 3: The Aims and Goals of the Corporation Statute

Roswell's corporation statute indicates that Roswell has a great degree of independence from the state, and that independence was a purposeful choice of the New York legislature. Massiah, 856 F. Supp. 2d at 498; see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 89 N.E.3d at 1235 (noting that the "particularized inquiry" must involve close analysis of "the public benefit corporation's enabling act.").

Roswell was made a public benefit corporation in order to provide it with "legal, financial, market and managerial flexibility."  N.Y. Pub. Auth. Law § 3551(7).  As noted in § II.C., supra, the hospital was given a great degree of financial autonomy by statute, ensuring that it could transact its own independent business.

Importantly, it was also given a separate existence from the state to empower it to hire, fire, and interact with employees as private actor would.  See N.Y. Pub. Auth. Law § 3554 (15-17) (setting forth Roswell's independence in hiring decisions and other areas of self-management).  The section of the corporation act dealing with legislative intent specifically states that it is meant to be construed such that "the rights of employees are protected."  N.Y. Pub. Auth. Law § 3551(9).

14

The remedy of punitive damages plays an important role in advancing the state's "legitimate interests in punishing unlawful conduct and deterring its repetition." BMW of North America, Inc. v. Gore, 517 U.S. 559, 568 (1996). They are tied, in large part, to the "reprehensibility" of a defendant's conduct. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003). Assessments of reprehensibility involve factors that are frequently important in employment cases such as this one, including "conduct evinc[ing] an indifference to or a reckless disregard of the health or safety of others" and intentional harm. Id. Certainly, there is "no more appropriate application of punitive damages than to punish and deter" attempts to dissuade whistleblowers, which are intentional efforts to suppress the speech of individuals who advocate for the safety and health of third parties and the public at large. Oldroyd v. Elmira Sav. Bank, F.S.B., 956 F. Supp. 393, 402 (W.D.N.Y. 1997), vacated in part on other grounds sub nom. Oldroyd v. Elmira Sav. Bank, F.S.B., 134 F.3d 72 (2d Cir. 1998).

Additionally, cases involving an individual's employment and unlawful discharge implicate the "financial vulnerability" of an individual who is terminated, in particular, due to the wide disparity in resources between employer and employee. State Farm Mut., 538 U.S. at 419; see also, e.g., Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 265 (S.D.N.Y. 2020) (noting that "employees are dependent on their employers for their economic livelihood[ a]nd generally speaking, there undoubtedly is a disparity of . . . power as between many [] employees and their employer"). It would contravene the intent of the legislators who enacted Roswell's corporation act to strip the hospital's employees of this important mechanism to enforce the laws against wrongfully terminating whistleblowers and those in protected classes.

Roswell was made independent from the state, and its competitive health in the market is bolstered by its status as an independent entity. It should not also be allowed to avoid the

15

resultant "costs associated with independence from the State." Massiah, 856 F. Supp. 2d at 499 (E.D.N.Y. 2012). Rather, Roswell should interact with its employees as an independent entity like any other corporation in New York, as the legislature intended.

### E.    Factor 4: The Extent of Public Funding Received by Roswell

Finally, Roswell is almost entirely self-funded, and an award of punitive damages against it would not burden taxpayers. See id. at 499; Clark-Fitzpatrick, at 516 N.E.2d at 192-93; see also Zhou, 2021 WL 4272286, at *5 (holding that the primary question at issue when determining whether punitive damages could be assessed against the hospital was "how an award of punitive damages against Roswell Park would be paid and its impact on the public fisc"). They are therefore available in this case.

The State of New York's contribution to Roswell's bottom line is extremely minor. The state contributed 8% of the hospital's budget in 2024. CEO Johnson Dep., 25:16-20, 30:13-22; see also Ex. 7 (indicating that the state's share of Roswell's funding shrunk in 2025). A portion of that funding is earmarked as capital funding by the state as well, meaning that it goes to expenses related to fixed assets and would not fund a judgment. CEO Johnson Dep., 31:13-34:3. Most of Roswell's income is derived from what it charges for its services. See Ex. 7. Additional income comes from the Roswell Park Alliance Foundation, a private 501(c)(3) nonprofit organization that fundraises for Roswell, which raised approximately $29,500,000 for the Roswell in fiscal year 2024-25. Id. at 34; see also CEO Johnson Dep., 28:11-29:21 (describing the Roswell Park Alliance Foundation as the hospital's "philanthropic arm" which raises funds "just for Roswell").

As such, Roswell is not an institution that is so dependent on state funding that "the imposition of punitive damages against defendant would ultimately punish only the innocent

16

taxpayers of New York State." Clark-Fitzpatrick, Inc., 516 N.E.2d at 192 (holding that where approximately 49% of the organization's budget came from public sources, punitive damages were not available). Rather, here, "[t]he Legislature . . . pointedly created an entity with a distinct corporate, legal, and financial identity in order to reap the benefits of private management for its . . . hospitals . . . [so] it should not avoid the costs associated with independence from the State." Massiah v. MetroPlus Health Plan, Inc., 856 F. Supp. 2d 494, 499 (E.D.N.Y. 2012) (holding that punitive damages were available against a public benefit corporation that only derived 4% its budget from state sources).

Finally, New York is not liable for payment of any Roswell bonds or notes or budget deficits. See N.Y. Pub. Auth. Law § 3562. A punitive damages award in this case therefore would not have any "impact on the public fisc." Zhou, 2021 WL 4272286, at *5; see also City of Newport, 453 U.S. at 267 (reasoning that punitive damages should not be available against municipalities because that would punish taxpayers who took no part in a tort). There are no countervailing material facts on the record showing that the state would shoulder the burden of any judgment against Roswell. Anderson, 477 U.S. at 248. The state's minimal contribution to Roswell's finances means that punitive damages can be assessed against the hospital with minimal, if any, impact on taxpayers or the public coffers.

17

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's

Motion for Summary Judgment against Roswell as to its defense of immunity from punitive

damages.

Dated: February 26, 2026
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
     David E. Gottlieb
     William Baker

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
dgottlieb@wigdorlaw.com
wbaker@wigdorlaw.com

*Counsel for Plaintiff*

18