UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNE GRAND'MAISON, M.D.,

              Plaintiff,

     -v-

ROSWELL PARK COMPREHENSIVE
CANCER CENTER; CANDACE JOHNSON,
Ph.D., in her individual and professional
capacities; RENIER BRENTJENS, M.D.,
Ph.D., in his individual and professional
capacities; CARL MORRISON, M.D., DVM,
in his individual and professional capacities;
JOHN KANE III, M.D., in his individual
and professional capacities; and ERROL
DOUGLAS, Ph.D., in his individual and
professional capacities,

              Defendants.

1:23-CV-00099-JLS-MJR

REPORT AND RECOMMENDATION

## INTRODUCTION

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr., to hear and report on dispositive motions for consideration by the District Court. (Dkt. No. 12). Before the Court are the parties' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. Nos. 100, 102). For the following reasons, it is recommended that Defendants' motion for summary judgment (Dkt. No. 100) be granted as to Plaintiff's Equal Pay Act claim, and that the Court decline supplemental jurisdiction

over Plaintiff's remaining claims.  It is further recommended that Plaintiff's motion for summary judgment (Dkt. No. 102) be denied as moot.

## PROCEDURAL HISTORY

On January 31, 2023, Plaintiff Anne Grand'Maison, M.D., commenced this action asserting claims against Defendants Roswell Park Comprehensive Cancer Institute ("Roswell Park"), Health Research Inc. Roswell Park Division, Candace Johnson, Ph.D ("Dr. Johnson"), Renier Brentjens, M.D., Ph.D. ("Dr. Brentjens"), Carl Morrison, M.D., DVM ("Dr. Morrison"), John Kane III, M.D. ("Dr. Kane"), and Errol Douglas, Ph.D. (Dr. Douglas),[1] arising out of Plaintiff's former employment as a Staff Physician at Roswell Park.  (Dkt. No. 1).  Plaintiff alleges that Roswell Park, a cancer research and treatment hospital in Buffalo, has "put numerous patients in serious danger, . . . failed to adhere to basic patient safety standards and completely violated the Hippocratic Oath to its patients—and then fired" Plaintiff for blowing "the whistle on this egregious conduct."  (*Id.* ¶ 1).

The Complaint sets forth eight causes of action: (1) violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); (2) violation of the New York Equal Pay Act, New York Labor Law ("NYLL") § 194; (3) unlawful retaliation under NYLL § 740, *et seq.*; (4) unlawful retaliation under NYLL § 741, *et seq.*; (5) unlawful retaliation Under New York Not-for-Profit Corporation Law ("NYNPCL") § 715-b, *et seq.*; (6) unlawful discrimination and retaliation under New York State Human Rights Law ("NYHRL") § 290, *et seq.*;

---

[1] Dr. Johnson, Dr. Brentjens, Dr. Morrison, Dr. Kane, and Dr. Douglas are referred to collectively as the "Individual Defendants."

(7) unlawful retaliation under NYLL § 215; and (8) unlawful discrimination in violation of Buffalo Administrative Code ("BAC") § 154-11. (*See* Dkt. No. 1).[2]

On March 28, 2023, Health Research Inc. Roswell Park Division moved to dismiss. (Dkt. No. 9). The remaining Defendants filed an answer on April 3, 2023. (Dkt. No. 15). Plaintiff then filed a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) indicating that this action is voluntarily dismissed, without prejudice, against Health Research Inc. Roswell Park Division. (Dkt. No. 18). The Court then entered a case management order and discovery proceeded. (Dkt. No. 21).[3] The parties filed several discovery motions, (*see, e.g.*, Dkt. Nos. 46; 61; 77; 88), which the Court resolved in turn.

On February 26, 2026, the parties filed the instant summary judgment motions. (Dkt. Nos. 100; 102). Roswell Park, Dr. Johnson, Dr. Brentjens, Dr. Morrison, Dr. Kane, and Dr. Douglas (collectively, "Defendants") seek dismissal of the Complaint in its entirety. (Dkt. No. 100). Plaintiff opposed the motion (Dkt. No. 113), and Defendants replied. (Dkt. No. 117). Separately, Plaintiff moves for summary judgment against Roswell Park "as to its claimed defense of immunity from punitive damages." (Dkt. No. 102). Defendants opposed the motion (Dkt. No. 112), and Plaintiff replied. (Dkt. No. 114). The Court heard argument on both motions on May 13, 2026. (*See* Dkt. No. 118).

---

[2] The First and Second causes of action are asserted against Roswell Park only. The remaining causes of actions are asserted against all Defendants. (*Id.*)

[3] The case management order deadlines were amended several times. The operative case management order is the Fifth Amended Case Management Order (Dkt. No. 76), which was subsequently amended in part to impose a deadline of February 26, 2026 for dispositive motions. (Dkt. No. 98).

## FACTUAL BACKGROUND[4]

### *The Parties*

Roswell Park is a public benefit corporation founded in 1898.  (Dkt. No. 102-2 ¶ 2; Dkt. No. 112-2 ¶ 2).  Plaintiff, a sarcoma medical oncologist, began her employment at Roswell Park on November 1, 2016.  (Dkt. No. 100-2 ¶ 1; Dkt. No. 113-1 ¶¶ 1, 241; Dkt. No. 117-12 ¶ 241).[5]  She was hired as an Assistant Professor of Oncology, and served as a Staff Physician.  (Dkt. No. 113-1 ¶¶ 1, 156, 241; Dkt. No. 117-12 ¶¶ 156, 241).  Prior to her employment at Roswell Park, Plaintiff attended medical school at Sherbrooke University and graduated in 1988.  (Dkt. No. 100-2 ¶ 2; Dkt. No. 113-1 ¶ 2).  She then received training in medical oncology at McMaster University from 2013 to 2014.  (*Id.*).  Plaintiff also attended a fellowship at MD Anderson Cancer Center ("MD Anderson") from August 2014 to September 2015.  (Dkt. No. 100-2 ¶ 7; Dkt. No. 113-1 ¶ 7).

Dr. Johnson started at Roswell Park in 2002 as the Chair of the Department of Pharmacology and Therapeutics.  (Dkt. No. 100-2 ¶ 15; Dkt. No. 113-1 ¶ 15).  She became CEO in 2015.  (*Id.*)  Dr. Brentjens joined Roswell Park in or around September 2021 and serves as Deputy Director and Chair of Medicine.  (Dkt. No. 100-2 ¶ 18; Dkt. No. 113-1 ¶ 18).  As Chair of Medicine, Dr. Brentjens oversees medical oncologists and was Plaintiff's supervisor.  (Dkt. No. 100-2 ¶ 19; Dkt. No. 113-1 ¶ 19).  Dr. Morrison has

---

[4] This section contains a brief summary of the facts underlying this lawsuit.  The facts described herein are taken from the pleadings, motion papers, statements of undisputed facts, and exhibits filed in this lawsuit. When citing a proposed fact within Defendants' statement of material facts in support of their summary judgment motion (Dkt. No. 100-2), Plaintiff's statement of additional material facts (Dkt. No. 113-1), or Plaintiff's statement of material facts in support of her summary judgment motion (Dkt. No. 102-2), the Court has confirmed that the opposing parties' responding statement (Dkt. Nos. 113-1; 112-2; 117-12) either admits the fact or fails to specifically controvert it with evidence. *See* W.D.N.Y. L.R. Civ. P. 56(a). Where an issue of proposed fact is disputed, the Court has so noted.

[5] Sarcomas are a group of rare forms of soft-tissue cancer, and there are a variety of subtypes of sarcoma. (Dkt. No. 113-1 ¶ 236; Dkt. No. 117-12 ¶ 236).

4

been employed by Roswell Park since 2007 and became the Chair of Pathology in 2021. (Dkt. No. 100-2 ¶ 21; Dkt. No. 113-1 ¶ 21). Currently, Dr. Morrison serves as Chair Emeritus of the Department of Pathology and the Senior Vice President of Scientific Development and Integrative Medicine. (Dkt. No. 100-2 ¶ 22; Dkt. No. 113-1 ¶ 22). Dr. Kane began working at Roswell Park in 2002 and became chief of the melanoma/sarcoma service in 2006. (Dkt. No. 100-2 ¶ 26; Dkt. No. 113-1 ¶ 26). Currently, Dr. Kane is an Emeritus Professor of Oncology at Roswell Park, having retired from clinical practice at Roswell Park in May 2024 after serving as a Professor of Oncology and Chairman of the Department of Surgical Oncology. (Dkt. No. 100-2 ¶ 27; Dkt. No. 113-1 ¶ 27). Dr. Douglas currently serves as Senior Vice President, Chief Human Resources Officer at Roswell Park, having previously served as Vice President of Human Resources. (Dkt. No. 100-2 ¶ 32; Dkt. No. 113-1 ¶ 32).

### Plaintiff's Involvement with Human Resources and Conduct at Multidisciplinary Conference ("MDC")

The Human Resources Department at Roswell Park received complaints about Plaintiff regarding bullying or otherwise inappropriate workplace behavior throughout her employment. (Dkt. No. 100-2 ¶¶ 33-45; Dkt. No. 113-1 ¶¶ 33-45). It continued to receive complaints about Plaintiff as late as 2021. (See Dkt. No. 100-2 ¶ 44; Dkt. No. 113-1 ¶ 44).

Plaintiff attended MDC—also known as a "tumor board"—approximately once per week during her employment at Roswell Park. (Dkt. No. 100-2 ¶ 46; Dkt. No. 113-1 ¶ 46). As Plaintiff understood it, the purpose of MDC was to "review in detail every case and what [the participants'] assessment ha[d] been of the patient," as well as to "discuss [the] very complicated cases and come up with a plan—a treatment plan or additional

5

investigation that may be needed, too." (Dkt. No. 100-2 ¶ 47; Dkt. No. 113-1 ¶ 47). Plaintiff interacted with Dr. Morrison at MDC. (Dkt. No. 100-2 ¶ 48; Dkt. No. 113-1 ¶ 48). According to Dr. Morrison, Plaintiff behaved in a confrontational manner at MDC. (Dkt. No. 100-2 ¶ 50; Dkt. No. 113-1 ¶ 50). He also asserts that Plaintiff yelled at, or spoke down to, colleagues at MDC. (Dkt. No. 100-2 ¶ 51; Dkt. No. 113-1 ¶ 51). In addition, Dr. Kane described Plaintiff as "argumentative" and a "bully" at MDCs. (Dkt. No. 100-2 ¶ 52; Dkt. No. 113-1 ¶ 52).

### Extension of Plaintiff's Probationary Period and Creation of a Mentoring Committee

Staff Physicians at Roswell Park, like Plaintiff, are subject to a five-year probationary period. (Dkt. No. 100-2 ¶ 58; Dkt. No. 113-1 ¶ 58). In July 2021, Plaintiff's supervisor at the time, Dr. Gurkamal Chatta, provided Plaintiff with feedback regarding her probation performance. (Dkt. No. 100-2 ¶ 59; Dkt. No. 113-1 ¶ 59). At that point, Plaintiff was "fully in agreement" with Dr. Chatta that her interactions with pathology and surgery had not been good and that her interactions needed to improve. (Dkt. No. 100-2 ¶ 62; Dkt. No. 113-1 ¶ 62). As the end of Plaintiff's initial probationary period approached, Dr. Brentjens and Dr. Johnson discussed extending Plaintiff's probation. (Dkt. No. 100-2 ¶ 63; Dkt. No. 113-1 ¶ 63). Dr. Brentjens believed that Plaintiff's research publications had been "at best, modest" during her first five years at Roswell Park. (Dkt. No. 100-2 ¶ 64; Dkt. No. 113-1 ¶ 64). And Dr. Johnson had the impression that Plaintiff had difficulties interacting with others and had difficulty working as part of the sarcoma team. (Dkt. No. 100-2 ¶ 65; Dkt. No. 113-1 ¶ 65).

On or about September 20, 2021, Plaintiff received an evaluation in connection with her probation extension. (Dkt. No. 100-2 ¶ 66; Dkt. No. 113-1 ¶ 66). Plaintiff was

informed at that time there were "several concerning issues which need[ed] to be corrected prior to her completion of her probation time," including her "poor interactions with the other members of the Roswell Park Sarcoma team which ha[d] resulted in significant dysfunction within the team which may ultimately be detrimental to optimal patient care." (Dkt. No. 100-2 ¶ 67; Dkt. No. 113-1 ¶ 67). But the report also stated: "We fully acknowledge her clinical expertise and dedication to her patients. She is very highly regarded by her patients and she is a valuable asset to the institution." (Dkt. No. 113-1 ¶ 257; Dkt. No. 117-12 ¶ 257).

In conjunction with the probation extension, Dr. Johnson and Dr. Brentjens created a mentoring committee to help Plaintiff. (Dkt. No. 100-2 ¶ 68; Dkt. No. 113-1 ¶ 68). According to Dr. Ermelinda Bonaccio—who was named chair of the mentoring committee—the purpose of the committee was to give Plaintiff "the support that she would need to succeed." (Dkt. No. 100-2 ¶ 69; Dkt. No. 113-1 ¶ 69). It was not meant as a disciplinary measure. (Dkt. No. 113-1 ¶ 259; Dkt. No. 117-12 ¶ 259). The committee first met with Plaintiff on October 28, 2021 to discuss expectations, goals, and objectives, and to support Plaintiff in her research and interpersonal challenges. (Dkt. No. 100-2 ¶ 74; Dkt. No. 113-1 ¶ 74). Dr. Bonaccio also met with Plaintiff individually in connection with her mentoring committee. (Dkt. No. 100-2 ¶ 75; Dkt. No. 113-1 ¶ 75).

### *Plaintiff's Separation from Roswell Park*

On January 3, 2022, Amy Rokitka, the Physician Practice Coordinator for the Clinical Practice Plan (which is the practitioner billing entity for Roswell Park), e-mailed Plaintiff asking whether Plaintiff was board certified in medical oncology. (Dkt. No. 100-2 ¶ 77; Dkt. No. 113-1 ¶ 77). Plaintiff was aware that she needed to become board-certified

within five years of starting at Roswell Park. (Dkt. No. 100-2 ¶ 76; Dkt. No. 113-1 ¶ 76). But she did not respond to Rokitka's question about board certification. (Dkt. No. 100-2 ¶ 78; Dkt. No. 113-1 ¶ 78). She did, however, send Rokitka an e-mail on January 4, 2022, stating: "My husband is in the process of relocating in Canada and I will move back too of course. Ending date here at latest May 1st." (Dkt. No. 100-2 ¶ 79; Dkt. No. 113-1 ¶ 79).

Later that day, Denise McIntyre, a member of Roswell Parks Medical Staff Office, learned from Andre Charest, Plaintiff's husband, that Charest was "not aware of [him] moving back to Canada as of now." (Dkt. No. 113-1 ¶ 263; Dkt. No. 117-12 ¶ 263). But Plaintiff never followed up with Rokitka to inform her that she was not moving to Canada. (Dkt. No. 100-2 ¶ 81; Dkt. No. 113-1 ¶ 81). Plaintiff also drafted a letter, dated January 4, 2022, in which she wrote that she was resigning her position effective May 1, 2022. (Dkt. No. 100-2 ¶ 82; Dkt. No. 113-1 ¶ 82).[6] Rokitka forwarded Plaintiff's January 4, 2022 e-mail to two other individuals the same day. (Dkt. No. 100-2 ¶¶ 83, 84; Dkt. No. 113-1 ¶¶ 83, 84).

The Clinical Practice Plan was responsible for processing physicians' resignations and circulating memoranda regarding resignations. (Dkt. No. 100-2 ¶ 85; Dkt. No. 113-1 ¶ 85). On January 21, 2022, a Clinical Practice Plan Memorandum with subject line "Anne Grand'Maison, MD" was circulated among over 35 individuals at Roswell Park. (Dkt. No. 100-2 ¶ 86; Dkt. No. 113-1 ¶ 86). This memorandum conveyed that Plaintiff "has resigned

---

[6] Plaintiff testified that she never transmitted the letter to anyone, and that she drafted the letter because she was in despair about the work environment and under a lot of "pressure." (*See* Dkt. No. 110-12 at 135:11-23).

8

from [Roswell Park] and her position in the Department of Medicine – Melanoma/Sarcoma effective at the close of the day May 1, 2022." (Dkt. No. 100-2 ¶ 87; Dkt. No. 113-1 ¶ 87).

Despite implementation of the mentoring committee, Plaintiff did not believe interactions at MDCs improved. (Dkt. No. 100-2 ¶ 89; Dkt. No. 113-1 ¶ 89). And Dr. Morrison testified that, in February 2022, he informed Dr. Kane that he could no longer tolerate Plaintiff's behavior towards him on the sarcoma service. (Dkt. No. 100-2 ¶ 90; Dkt. No. 113-1 ¶ 90).

On February 14, 2022, a meeting between Dr. Brentjens and Dr. Bonaccio occurred. (Dkt. No. 100-2 ¶¶ 93, 95; Dkt. No. 113-1 ¶¶ 93, 95). Dr. Brentjens, Dr. Bonaccio, and Dr. Douglas were also scheduled to meet the next day. (*Id.*) According to Defendants, at the February 15, 2022 meeting, a decision was made to terminate Plaintiff's employment due to the persistent nature of complaints and her unwillingness to make any progress or change over a sustained period of time, and that Dr. Brentjens would recommend Plaintiff's termination. (Dkt. No. 100-2 ¶¶ 97-98). Defendants claim that it was also decided at that time that Plaintiff's termination would not be effectuated immediately so that coverage for Plaintiff's patients could be coordinated. (Dkt. No. 100-2 ¶ 100).[7]

On March 14, 2022, Joseph Toni, a Roswell Park Administrator, informed Susan Johnson ("Ms. Johnson"), Executive Director of Human Resources, that Plaintiff had resigned and forwarded to Ms. Johnson Plaintiff's January 4, 2022 email in which she wrote that her ending date was at latest May 1st. (Dkt. No. 100-2 ¶ 146; Dkt. No. 113-1 ¶ 146). Although Dr. Douglas, Dr. Brentjens and Dr. Bonaccio were not aware of Plaintiff's

---

[7] Plaintiff disputes that any decision was made to terminate her employment on February 15, 2022. (Dkt. No. 113-1 ¶¶ 93-103).

e-mail as of February 15, 2022, Plaintiff's resignation was deemed an acceptable way to end her employment at Roswell Park. (Dkt. No. 100-2 ¶ 147; Dkt. No. 113-1 ¶ 147).[8] On March 16, 2022, Ms. Johnson sent Plaintiff a letter confirming acceptance of her notice of resignation. (Dkt. No. 100-2 ¶ 148; Dkt. No. 113-1 ¶ 148).

Plaintiff then requested to rescind her resignation. (Dkt. No. 100-2 ¶ 150; Dkt. No. 113-1 ¶ 150). Dr. Douglas was responsible for evaluating that request. (*Id*). Upon review, he denied Plaintiff's request and advised her by e-mail of the reasons for his decision— including that her probation had been extended due to a lack of collegial relationships with physicians, colleagues, and staff; the mentoring committee had provided feedback that Plaintiff's relationships had gotten worse to the point of being untenable; and the decision had already been made to terminate Plaintiff's employment on February 15, 2022. (Dkt. No. 100-2 ¶ 153; Dkt. No. 113-1 ¶ 153). Plaintiff's last day of employment at Roswell Park was May 1, 2022. (Dkt. No. 100-2 ¶ 155; Dkt. No. 113-1 ¶ 155).

## DISCUSSION

### *Rule 56 Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. A genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Viewing "the evidence produced in the light most favorable to the nonmovant, if a rational trier [of

---

[8] Although Plaintiff admits that Dr. Douglas, Dr. Brentjens and Dr. Bonaccio were not aware of Plaintiff's email as of February 15, 2022, and further admits that Roswell Park accepted Dr. Grand'Maison's supposed resignation, she denies—as noted above—that any prior termination decision had been made. (Dkt. No. 113-1 ¶ 147).

fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011).

In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). The court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted). However, a party cannot defeat a motion for summary judgment by relying upon conclusory statements or mere allegations unsupported by facts. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In addition, where "a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (internal citation, alterations, and quotation marks omitted). While "whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-

11

moving defendant, there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### ***Equal Pay Act Claim***

Plaintiff's First cause of action asserts a violation of the EPA.  (Dkt. No. 1 ¶¶ 336-339).  She alleges that she was paid less than two other doctors at Roswell Park—Dr. Jens Hillengass and Dr. Igor Puzanov—because of her sex.  (Dkt. No. 100-2 ¶ 164; Dkt. No. 113-1 ¶ 164).  Roswell Park argues that the "two comparators with whom [Plaintiff] attempts to compare herself are improper, as the work they performed . . . was far from equal to Plaintiff's work" and "any differences in their compensation were attributable to legitimate, non-discriminatory factors." (*See* Dkt. No. 100-1 at 12-16).[9]  Plaintiff, however, argues that "material similarities between Plaintiff and her comparators" render them "substantially equal," and there is no evidence that non-gender based differences influenced pay rates.  (*See* Dkt. No. 113 at 32).  This claim should be dismissed.

### *Legal Framework*

To establish a *prima facie* violation of the EPA, a "plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and

---

[9] Defendants argue that Plaintiff's state-law equal pay claim (in the Second cause of action) should be dismissed because the "same factors" that apply to EPA claims also apply to NYLL § 194 claims. (*See* Dkt. No. 100-1 at 12).  In *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 526 (2d Cir. 2023), however, the Second Circuit vacated and remanded the district court's order granting summary judgment as to the plaintiff's NYLL § 194 claim because the district court "did not consider the divergent requirements imposed by the EPA and New York Labor Law § 194(1) when assessing [the plaintiff's] claims and the [defendant's] affirmative defense." *Id.* at 526.  This Court, therefore, will address Plaintiff's NYLL § 194 claim, as well as her other state and local claims, separately below.

12

(3) the jobs are performed under similar working conditions." *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 690–91 (2d Cir. 2017) (internal citation omitted).

Once "a plaintiff has made out a *prima facie* case, the statute allows the employer the opportunity to invoke one or more of four enumerated affirmative defenses—that the wage differential was the product of a 'merit system', that it was produced by a bona fide seniority system, that it resulted from 'a system which measures earnings by quantity or quality of production', or that it was attributable to 'any other factor than sex.'" *Malec v. Metro. Life Ins. Co.*, No. 03-CV-969A, 2007 WL 969086, at *17 (W.D.N.Y. Mar. 30, 2007) (quoting 29 U.S.C. § 206(d)(1)). *See also Ryduchowski v. Port Auth. of New York & New Jersey*, 203 F.3d 135, 142 (2d Cir. 2000) ("the EPA makes it illegal for an employer to pay unequal compensation to those of different genders for equal work, 'except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" (quoting Section 206(d)(1)). Once the defendant establishes one of these defenses, the "plaintiff may counter the defendant's affirmative defense by offering evidence showing that the reasons sought to be proved are a pretext for sex discrimination." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992).

Upon review of this record, the Court concludes that: (1) Plaintiff has not met her *prima facie* burden; (2) Roswell Park has justified the challenged pay disparity with non-sex-based considerations; and (3) Plaintiff failed to produce evidence that Roswell Park's explanation is pretext for sex discrimination.

### Prima Facie Case

First, Plaintiff fails to establish a *prima facie* violation of the EPA.  Even if she was paid less than two male comparators, Dr. Puzanov and/or Dr. Hillengass, she has not adduced evidence of equal work under similar working conditions.  The "equal work inquiry" requires "evidence that the jobs compared are substantially equal." *Chiaramonte*, 677 F. App'x at 691 (internal citation and quotation marks omitted).  "'Substantially equal' does not mean 'identical.'" *Id.* (internal citation omitted).  But to "satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Id.* (internal citation omitted).  And a "successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice." *Id.* (internal citations omitted).  *See also Byrne v. Telesector Res. Grp., Inc.*, 339 F. App'x 13, 16 (2d Cir. 2009) (summary order) ("For purposes of an equal pay claim . . .  a plaintiff must show more than identical job titles; a finding of substantial equality must be based on actual job content") (citing *Marshall v. Bldg. Maint. Corp.*, 587 F.2d 567, 571 (2d Cir.1978)).

Plaintiff argues that "material similarities between Plaintiff and her comparators—that all were medical doctors working in rare cancers, that they held professorships and worked in clinics, and were all hired between 2016 and 2018—make them substantially equal." (Dkt. No. 113 at 32).  However, she fails to submit evidence detailing *actual job duties* of Dr. Hillengass or Dr. Puzanov showing that their positions are substantially equal to hers.  Plaintiff also admitted that she did not know either doctor's patient volume or Relative Value Units ("RVUs") during the time she worked at Roswell Park.  (*See* Dkt. No.

14

110-12 at 121:4-18).[10]  Roswell Park, however, submitted evidence demonstrating that both Dr. Hillengass and Dr. Puzanov surpassed Plaintiff in terms of RVU targets and patient volumes.  (*See* Dkt. No. 100-8 ¶¶ 10, 14-16) (declaration of Stephen Schinnagel, Administrator in the Department of Medicine at Roswell Park).[11]

Further, although Plaintiff identifies certain points of commonality with her comparators, she fails to account for major differences in job responsibilities as depicted in the undisputed record.  In particular, Dr. Hillengass works in a different service than Plaintiff; he is a hematologist in the myeloma service--which is separate from the sarcoma service.  (*See* Dkt. No. 100-2 ¶ 167; Dkt. No. 113-1 ¶ 167).  He also served as Chief of the myeloma service, which a leadership position that Plaintiff never held.  (Dkt. No. 100-2 ¶ 168; Dkt. No. 113-1 ¶ 168).  Dr. Hillengass also assumed various other roles at Roswell Park involving research and teaching responsibilities, such as Vice Chair of Research and Professor of Medicine at the Jacobs School of Medicine and Biomedical Services.  (Dkt. No. 100-2 ¶¶ 168, 172, 174; Dkt. No. 113-1 ¶¶ 168, 172, 174).  Plaintiff never held any of these roles or anything similar.  (*Id.*)

Furthermore, Dr. Puzanov, a medical oncologist, worked in the melanoma service—which is also separate from the sarcoma service.  (Dkt. No. 100-2 ¶ 176; Dkt. No. 113-1 ¶ 176).  He began his employment at Roswell Park in 2016—the same year as

---

[10] According to the American Medical Association, RVUs "are used to represent the value of resources needed to perform procedures and services" and each RVU "accounts for the time, skill and intensity involved in delivering care."  *See* American Medical Association, *Understanding Relative Value Units (RVUs)* < https://www.ama-assn.org/practice-management/cpt/understanding-relative-value-units-rvus> (last visited May 21, 2026).  An RVU consists of three core components: physician work, practice expense, and professional liability.  *Id.*

[11] Plaintiff maintains that she "is generally aware of how busy their clinics were and the complexity of their disease sites, both of which factors render them comparable" (*see* Dkt. No. 113-1 ¶ 192), but does not otherwise controvert this evidence.

Plaintiff—but was hired as Chief of Melanoma in the Department of Medicine and Director of Early Phase Clinical Trials Program.  (Dkt. No. 100-2 ¶ 179; Dkt. No. 113-1 ¶ 179).[12] In addition, the undisputed facts show that, over the next few years, Dr. Puzanov achieved significant career advancement that Plaintiff did not.  For example, in 2020, while continuing as Chief of Melanoma and Professor of Oncology, he was promoted to Senior Vice President of Clinical Investigations, Chief of the Division of Early Phase Clinical Trials, and Director of the Center for Early Phase Clinical Trials.  (Dkt. No. 100-2 ¶ 180; Dkt. No. 113-1 ¶ 180).  Then, in 2022, he was appointed as Medical Director of the Clinical Research Center.  (Dkt. No. 100-2 ¶ 181; Dkt. No. 113-1 ¶ 181).  Dr. Puzanov also serves as Roswell Park's Judith and Sanford Lipsey Endowed Chair in Clinical Research and is a Professor of Medicine at the Jacobs School of Medicine and Biomedical Sciences at the University at Buffalo.  (Dkt. No. 100-2 ¶¶ 182, 187; Dkt. No. 113-1 ¶¶ 182, 187).  Plaintiff never held these positions or anything similar.

In short, Plaintiff fails to demonstrate that her comparators "perform[ed] equal work on jobs requiring equal skill, effort, and responsibility."  *Chiaramonte*, 677 F. App'x at 690. It is not enough to point out "that some work duties overlap," as that assertion "ignores the myriad factors, such as education, training, job requirements, job responsibilities, hours worked, and similar working conditions, all of which need to be considered."  *Miller v. City of New York*, No. 15-CV-7563, 2018 WL 2059841, at *7 (S.D.N.Y. May 1, 2018). Accordingly, Plaintiff has not met her *prima facie* burden.  *See Byrne*, 339 F. App'x at 16 ("Because [the plaintiff] has adduced no evidence demonstrating equal job content with her comparators, she did not satisfy her *prima facie* burden"); *Price v. Mount Sinai Hosp.*,

---

[12] Plaintiff testified at her deposition that Dr. Puzanov "run[s] the clinical trial group."  (Dkt. No. 100-12 at 142).

16

458 F. App'x 49, 52 (2d Cir. 2012) ("where, as here, there was no basis in the record for the equivalency argument advanced by [the plaintiff], the district court correctly awarded summary judgment").

### Roswell Park's Justification for Pay Disparity

Even if Plaintiff had met her *prima facie* burden, summary judgment would still be appropriate because Defendants have justified the challenged pay disparity with a "factor other than sex." *See* 29 U.S.C. § 206(d)(1).  In the Second Circuit, to "establish the EPA's 'factor other than sex' defense, a defendant must prove only that the pay disparity in question results from a differential based on any factor except for sex." *Eisenhauer*, 84 F.4th at 513.[13]

Here, as noted above, Dr. Hillengass and Dr Puzanov served in leadership positions at Roswell Park, while Plaintiff did not.  Plaintiff, rather, was employed as a Staff Physician and was assigned to the professional, scientific and technical bargaining unit represented by the Public Employees Federation ("PEF").  (Dkt. No. 100-2 ¶ 156; Dkt. No. 113-1 ¶ 156).  Pursuant to a negotiated collective bargaining agreement ("CBA") between PEF and the State of New York, Staff Physicians are compensated through a combination of base salary, supplements, and fringe benefits.  (Dkt. No. 100-2 ¶ 157; Dkt. No. 113-1 ¶ 157).  Staff Physicians are allocated to grade 38 on the PEF salary schedule and, accordingly, receive the corresponding salary as their base pay.  (Dkt. No. 100-2 ¶ 158; Dkt. No. 113-1 ¶ 158).  Staff Physicians are eligible for supplemental compensation

---

[13] The court also clarified that, if "the pay disparity results from the employer's job-classification system, the job-classification system must also serve a 'legitimate business-related' purpose." *Id.* at 513 n.3 (quoting *Aldrich*, 963 F.2d at 525).  While Plaintiff argues that this standard should apply here (*see* Dkt. No. 113 at 32), she does not contend that the challenged disparity resulted from a job-classification—nor is there any evidence indicating such.  The Court, therefore will consider whether the pay disparity in question results from a differential based on any factor except for sex.

through the Clinical Practice Plan, which is determined utilizing numerous factors. (Dkt. No. 100-2 ¶ 159; Dkt. No. 113-1 ¶ 159). Staff physicians can also appeal their compensation under the CBA (which Plaintiff never did). (Dkt. No. 100-2 ¶¶ 160, 161; Dkt. No. 113-1 ¶¶ 160-161). By contrast, clinical leadership positions at Roswell Park (such as Chief, Chair, and Senior Vice President) are Management/Confidential positions that are not represented by PEF (or any union); nor are they subject to any CBA. (Dkt. No. 100-2 ¶ 162; Dkt. No. 113-1 ¶ 162).

The Court is aware that, under the EEOC's regulations, the "establishment by collective bargaining or inclusion in a collective bargaining agreement of unequal rates of pay does not constitute a defense available to either an employer or to a labor organization," and "[a]ny and all provisions in a collective bargaining agreement which provide unequal rates of pay in conflict with the requirements of the EPA are null and void and of no effect." 29 C.F.R. § 1620.23. Here, however, Roswell Park states that compensation for clinical leadership positions is determined based on the employee's qualifications, experience, and scope of responsibilities in alignment with fair market value principles. (Dkt. No. 100-2 ¶ 163). And it also submitted uncontroverted evidence detailing these characteristics with respect to Plaintiff and her comparators.

Specifically, Dr. Hillengass has a Ph.D. in addition to his medical degree, and is board certified in internal medicine and hematology/oncology. (Dkt. No. 100-7 ¶ 26) (Declaration of Ms. Johnson). Prior to Roswell Park, he served as Deputy Chief of Multiple Myeloma service and head of the autologous transplant program at the University of Heidelberg in Germany. (Id.) He also worked in his field of study for over 15 years prior to joining Roswell Park, was the principal or co-investigator on a number of trials,

18

and has published 115 peer-review publications in his field of expertise. (*Id.*) Dr. Puzanov has a Master's degree in Clinical Investigation in addition to his medical degree, is a Fellow of the American College of Physicians ("FACP"), and is board certified in internal medicine and medical oncology. (*Id.* ¶ 27). Roswell Park purports that he also played a key role in the development and FDA approval of several breakthrough anti-cancer drugs and contributed to almost 200 manuscripts, articles, and reviews. (*Id.*) Plaintiff, however, did not have a Ph.D., MSCI, or FACP designation, did not establish a research program, did not have responsibilities of research operations, did not hold similar positions in outside organizations, and was not board certified in medical oncology. (*Id.* ¶ 30).

Accordingly, this Court concludes that Roswell Park has sufficiently justified any pay disparity between Plaintiff and Dr. Hillengass and Dr Puzanov with factors other than sex.[14]

### Pretext

Lastly, the record lacks sufficient evidence from which a reasonable jury could find that Roswell Park's explanation is pretext for sex discrimination. In "the context of the EPA, the Second Circuit has instructed that '[t]he appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has used the factor reasonably in light of the employer's stated purpose as well as its other practices.'" *Zimpfer v. Hilbert Coll.*, 788 F. Supp. 3d 520, 543 (W.D.N.Y. 2025) (quoting *Aldrich*, 963 F.2d at 526).

---

[14] Plaintiff seeks to rely on *Butler v. New York Health & Racquet Club*, 768 F. Supp. 2d 516, 531 (S.D.N.Y. 2011), where the court denied summary judgment to the defendants on an EPA claim where the defendants "simply rel[ied] on a set of amorphous factors" allegedly used to determine pay rates, but "utterly failed to explain, except in the most conclusory terms, how these criteria were applied in a non-discriminatory way to differentiate" the plaintiff from male employees who earned more than she did. *Id.* *Butler*, however, is distinguishable. Roswell Park has identified the factors considered in determining compensation, and also submitted uncontroverted evidence detailing these characteristics with respect to Plaintiff and her comparators.

Here, Roswell Park proffered evidence that it compensates employes based on qualifications, experience, and scope of responsibilities. (*See, e.g.,* Dkt. 100-7 ¶¶ 20-25). Although Plaintiff states that "these are plainly not the only factors that Roswell evaluated in determining pay," (Dkt. No. 113-1 ¶ 163), she offers no evidence to bear out that conclusion. Further, her contention that it is "clear that the compensation structure for doctors at Roswell is not as rigid as the hospital makes it out to be"—based solely on that the fact that a bonus and salary review was requested on her behalf (*see* Dkt. No. 113 at 32)—does not support that disparate compensation had anything to do with Plaintiff's sex. She therefore fails to establish pretext.

For all of these reasons, Plaintiff's EPA claim in the First cause of action should be dismissed.

### ***Remaining Claims***

Plaintiff's remaining claims (in the Second through Eighth causes of action) arise under state and local law. *See* Dkt. No. 1 ¶¶ 340-376 (alleging claims under NYLL § 194, NYLL §§ 740-741, NYNPCL § 715-b, NYHRL § 290, NYLL § 215, and BAC § 154-11). District courts "have supplemental jurisdiction over state-law claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121–22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(a)).

Here, the Court has supplemental jurisdiction over Plaintiff's state and local claims because they arise from the same core set of facts as Plaintiff's EPA claim—the only federal claim in this lawsuit. Supplemental jurisdiction, however, "is traditionally 'a doctrine of discretion, not of plaintiff's right.'" *Id.* at 122 (quoting *United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 726 (1966)). And subsection (c) of Section 1367 "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *Id.* (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). Of "particular relevance here, a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1367(c)(3)). Once "a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity . . . in deciding whether to exercise jurisdiction." *Id.* (internal citation and quotation marks omitted).

In the absence of any viable cause of action under federal law, this Court recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's claims in the Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth causes of action in the interests of economy, convenience, fairness, and comity. *See id.* ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (citation omitted).

### *Immunity from Punitive Damages*

Lastly, Plaintiff moves for summary judgment against Roswell Park as to its claimed defense of immunity from punitive damages. (*See* Dkt. No. 102-1 at 5). Given the recommendations above, this Court recommends that the District Court deny Plaintiff's motion as moot. *See, e.g., Cooper v. United Airlines*, Inc., No. 15-CV-5645 (VEC), 2017 WL 3278924, at *6 (S.D.N.Y. Aug. 1, 2017) ("Because the Court has granted

21

[Defendant's] Motion for Summary Judgment on all the substantive claims alleged in Plaintiff's Complaint, Plaintiff's claim for punitive damages is moot").

## CONCLUSION

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment (Dkt. No. 100) be **GRANTED** as to Plaintiff's Equal Pay Act claim in the First cause of action, and that the Court decline supplemental jurisdiction over Plaintiff's claims in the Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth causes of action. It is further recommended that Plaintiff's motion for summary judgment (Dkt. No. 102) be **DENIED** as moot.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

Dated:    June 1, 2026
          Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

23